UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KEVIN THORNTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No. 1:15-cv-00320-SEB-MJD |
| | ) |
| CMB ENTERTAINMENT, LLC, | ) |
| BRYAN ABRAMS, | ) |
| MARK CALDERON, | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION ON
DEFENDANTS' PARTIAL MOTION TO DISMISS**

This matter comes before the Court on Defendants' Partial Motion to Dismiss Counts II, III, and IV of Plaintiff's Complaint. [Dkt. 9.] The Magistrate Judge, being duly advised, recommends that the Court **GRANT IN PART** and **DENY IN PART** Defendants' motion.

**I.     Background**

Kevin Thornton ("Plaintiff") filed his initial complaint in state court against CMB Entertainment, LLC, ("CMB"), Bryan Abrams ("Abrams"), and Mark Calderon ("Calderon") (collectively "Defendants") on January 22, 2015. [Dkt. 1.] The matter was then removed to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. [Dkt. 1 at 1-2.] Plaintiff alleges that he, Abrams, and Calderon formed CMB in 2011 for the purpose of operating a band known as "Color Me Badd." [*Id.* ¶¶ 5-6.] Plaintiff further alleges that Abrams induced Plaintiff to join the LLC on the basis of false representations, [*id.* ¶¶ 20, 26], and that Abrams and Calderon have harmed CMB's intellectual property. [*Id.* ¶ 18.]

1

Plaintiff's complaint includes four causes of action. He first asks the Court to "declare the rights, status and legal relations of the parties as they relate to CMB," [*id.* ¶ 24 (Count I)], and he then asks the Court to dissolve CMB and determine the parties' rights to CMB's assets. [*Id.* ¶ 26 (Count II).] Plaintiff next asserts that Abrams is liable for intentional infliction of emotional distress, [*id.* ¶¶ 28-29 (Count III)], and he finally asserts that Abrams and Calderon are liable for tortious interference with contractual relations. [*Id.* ¶¶ (Count IV).]

## II. Discussion

Defendants move to dismiss Counts II, III, and IV of Plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6). [Dkt. 9.] To survive Defendant's 12(b)(6) motion, Plaintiff's complaint must state a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint's factual allegations need not be "detailed," but a plaintiff's grounds for relief require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555. In applying these principles, the court must accept all well-pleaded allegations of a complaint as true and draw all reasonable inferences in favor of the plaintiff. *Cler v. Illinois Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005).

### A. Dismissing Count II

Plaintiff claims in Count II of his complaint that CMB should be dissolved because its formation was based upon Abram's allegedly fraudulent representations. [Dkt. 1-1 ¶¶ 25-26.] Specifically, Plaintiff claims that "[a]t the time they formed CMB Abrams informed Thornton that he was sober and had been for a time. In fact as it turned out Abrams had not been sober. . . .

2

Abrams' [*sic*] statements that he was sober at the time CMB were [*sic*] formed were false and fraudulent and in reliance of those statements Thornton entered into the business relationship with Abrams." [*Id.* ¶¶ 12, 20.] Defendants move to dismiss this count under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff fails to meet the minimum pleading requirements under Federal Rule of Civil Procedure 9(b). [Dkt. 9.]

Rule 9 states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). These circumstances "include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (citation and quotation marks omitted). Put differently, a complaint satisfies Rule 9(b) when it provides "'the who, what, when, where, and how: the first paragraph of a newspaper story.'" *Hoffman v. Nationwide Mut. Ins. Co.*, No. 10-CV-3841, 2011 WL 3158708, at *3 (N.D. Ill. July 26, 2011) (quoting *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007)). The primary purpose of the rule is to give the defendant "fair notice" of the allegations against it. *See Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

Indiana recognizes a claim for fraud "when there is 'a material misrepresentation of past or existing fact made with knowledge of or reckless disregard for the falsity of the statement, and the misrepresentation [is] relied upon to the detriment of the relying party.'" *Schott v. Huntington Nat. Bank*, 914 F. Supp. 2d 933, 941 (S.D. Ind. 2012) (quoting *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 675 (Ind. 1997)).

Courts in this circuit have provided examples of pleadings that do and do not satisfy the particularity requirements of Rule 9(b). For example, in *Reschke v. Pactiv, LLC*, the plaintiff claimed that the defendant made "'false and fraudulent representations' relating to his severance pay." No. 1:14-CV-04656, 2014 WL 7054143, at *1 (N.D. Ill. Dec. 12, 2014). The court found that this statement did not satisfy Rule 9(b) because the claim did not provide information regarding who said the false statements, where they were said, what exactly was said, and through what means the statements were communicated. *Id.* In contrast, the court in *Mathioudakis v. Conversational Computing Corporation* found the plaintiff had pled his claim of fraud with particularity when he alleged that "in approximately late 2005 or early 2006" the defendant contacted the plaintiff by telephone seeking a short-term loan and made representations regarding the existence of a foreign investor, the receipt of a wire transfer confirmation, and a delay in transfer. No. 1:12-CV-00558-JMS-DKL, 2012 WL 4052316, at *4 (S.D. Ind. Sept. 13, 2012). The court acknowledged that these allegations did not provide "[t]he exact dates of the telephone calls," but the court found that such precision was not required at the pleading stage. *Id.* (citing *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006)).

Plaintiff here has provided the "who, what, when, where, and how" of his fraud claim. Plaintiff states specifically that Abrams told Plaintiff that Abrams was sober; that this statement was false; that this statement was made to induce Plaintiff to join in the business of CMB; and that Plaintiff relied on this statement in deciding to join the business. [Dkt. 1-1 ¶¶ 9-13, 20.] Unlike the Plaintiff in *Reschke*, Plaintiff here does not claim only that fraudulent representations were made; instead, he states that Defendant Abrams himself made the representations, and that those representations included a false statement that Abrams was sober. Plaintiff therefore

4

explained both the "identity of the person who made the misrepresentation" and the "content of the misrepresentation." *Windy City*, 536 F.3d at 668.

Plaintiff then addressed the other circumstances of the alleged fraud, as the complaint alleges that Abrams' misrepresentations were made "[a]t the time [the parties] formed CMB[.]" [Dkt. 1-1 ¶ 12.] This allegation admittedly does not include a specific time or place, but, as explained above, courts in the past have accepted relatively general allegations regarding these circumstances. *See Mathioudakis*, 2012 WL 4052316, at *4. In addition, the primary purpose of Rule 9(b) is to give the defendants "fair notice" of the plaintiff's claim. *See Vicom*, 20 F.3d at 777. Here, Defendants Abrams and Calderon are themselves members of CMB, and so Defendants surely know when and where the LLC was formed. Defendants can therefore determine when and where the alleged fraud took place, and Defendants accordingly have "fair notice" of the conduct that is at issue. This is sufficient to satisfy Rule 9(b), and that Rule thus presents no basis to dismiss Count II.

Defendants then argue that Count II is nonetheless deficient because Plaintiff has not pled factual matter to support his requested remedy. [Dkt. 10 at 4-7.] They note that Plaintiff asks the Court to forcibly dissolve CMB, and they observe that such dissolution is permissible only when it is "not reasonably practicable" to carry on the business. [*Id.* at 5 (quoting Ind. Code § 23-18-9-2).] They then argue that judicial dissolution is an "extreme" remedy, and they contend that Plaintiff's allegations do not support an inference that this remedy is warranted. [*Id.* at 5-7.]

Defendants' argument is based primarily on a single paragraph of the complaint, which states that the parties' band "has enjoyed international recognition, [has received] renewed interest in bookings[,] and has secured several significant bookings[.]" [Dkt. 1-1 ¶ 16.] Defendants contend that this allegation shows that the members of CMB remain capable of

5

managing the LLC and that the LLC remains financially viable. [Dkt. 10 at 6-7.] They accordingly conclude that it obviously **is** "reasonably practicable" to continue carrying on the business, such that dissolution is unwarranted. *Id.*

This argument ignores significant allegations in the remainder of the complaint. According to Plaintiff's claims, Defendant Abrams' failure to maintain his sobriety "caused significant negative publicity for the band," and Abrams "voluntarily left the band in 2013[.]" [Dkt. 1-1 ¶¶ 13-14.] The band then enlisted a new singer—Martin Kember—to replace Abrams, [*id.* ¶ 15], and only **then** did the band enjoy its "international recognition" and "significant bookings." [*Id.* ¶ 16.] Plaintiff **now** alleges that "Abrams reached out to Calderon and convinced [Calderon] to allow him back into the band **to the exclusion of Kember**." [*Id.* ¶ 17 (emphasis added).]

Taking these allegations as true—as the Court must at this stage of the litigation—it appears 1) that the band experienced "significant" problems when Abrams was a part of the band; 2) that the band subsequently achieved success by replacing Abrams with Kember; and 3) that the band has nonetheless decided to now replace Kember with Abrams. This last decision obviously ignores both Kember's role in helping the band find success and Abrams' role in causing the bands' earlier struggles, and the Court can thus infer that the LLC has embarked on a course of action that will seriously endanger its prior successes. Moreover, the decision to embark on this course of action has apparently driven a wedge between Plaintiff, Abrams, and Calderon. [*See* Dkt. 1-1 ¶ 19 ("The actions of Abrams and Calderon have been oppressive to Thornton.").] Taken together, then, Plaintiff's allegations allow the Court to infer that both the financial viability and managerial harmony of the LLC are in serious jeopardy. This, in turn, may

render it "impracticable" to carry on the business,[1] and this, in turn, may make dissolution appropriate. *See* Ind. Code § 23-18-9-2. Plaintiff has therefore stated at least a "plausible" claim for his requested relief, and the Magistrate Judge accordingly recommends that the Court **DENY** Defendants' motion to dismiss Count II.

### B. Dismissing Count III

In Count III of Plaintiff's complaint, Plaintiff claims that "Abrams engaged in 'extreme and outrageous' conduct towards Thornton" and that "[s]aid conduct intentionally or recklessly caused Thornton severe emotional distress." [Dkt 1-1 ¶¶ 28-29.] This claim, in turn, is based on Plaintiff's prior allegation that Abrams "harassed and made false and disparaging comments towards Thornton and embarked on a plan to embarrass and humiliate Thornton and to exclude him from CMB." [*Id.*¶ 22.] Defendants argue that these allegations fail to state a plausible claim for intentional infliction of emotional distress ("IIED") and should therefore be dismissed. [Dkt. 10 at 8.]

As noted above, a complaint will survive a motion to dismiss only if the complaint states a claim to relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id.* at 555. Thus, a complaint "must allege 'some specific facts' to support the legal claims asserted." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013) (quoting *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011)).

---

[1] As Defendants note, Indiana courts have not yet explained exactly what circumstances render it "impracticable" to carry on the business of an LLC. [Dkt. 10 at 5.] Other jurisdictions, however, have considered factors such as managerial deadlock and financial distress, [*see id.* at 5-6 (citing, *inter alia*, *In re 1545 Ocean Ave., LLC*, 893 N.Y.S.2d 590, 597-98 (N.Y. App. Div. 2010)], and so the managerial and financial difficulties raised by Plaintiff's complaint appear to be the sort of circumstances that may make dissolution appropriate.

For the tort of intentional infliction of emotional distress, "Indiana requires conduct that is so extreme that it 'goes beyond all possible bounds of decency' and would cause an average member of the community to shout 'Outrageous!'" *Hammond v. Martin*, No. 2:12 CV 137, 2014 WL 888675, at *4 (N.D. Ind. Mar. 5, 2014) (quoting *Westminster Presbyterian Church of Muncie v. Yonghong Cheng,* 992 N.E.2d 859, 870 (Ind. Ct. App. 2013)).

The Seventh Circuit has provided an example of a claim for intentional infliction of emotional distress that does not establish facial plausibility. In *Harriston v. Chicago Tribune Co.*, the plaintiff alleged that the defendants "conducted a continuous series of intentionally discriminatory acts, which caused her emotional distress." 992 F.2d 697, 703 (7th Cir. 1993).[2] Specifically, the plaintiff claimed the following as intolerable conduct:

> not being allowed to supervise two white subordinates; being reprimanded for no reason; being refused participation in the Tribune's Management Incentive Fund; being forced out of her management position as EEO/Employment Manager; being promised a promotion in advertising she was never given; having a major account [Montgomery Ward] taken away from her and being given one of the least lucrative sales territories; being excluded from office activities; not being advised of changes in policy and being reprimanded for asking about such changes; being falsely accused of having poor sales; being threatened with discipline; having her telephone calls monitored through the use of an eavesdropping device; having her private vehicle damaged and vandalized on several occasions in the Tribune private parking lot and having Tribune management ignore her concern for her property and personal safety.

*Id.* The court found that the alleged conduct was not severe enough to establish an IIED claim, and the court upheld the district court's dismissal of the plaintiff's claim. *Id.*; *accord, e.g.*, *Hammond*, 2014 WL 888675, at *4 (noting that allegations of a "hostile

---

[2] *Harriston* involved an application of Illinois law, but the elements of an IIED cause of action under Illinois and Indiana law are essentially the same. *Compare, e.g.*, *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) ("First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress."), *with Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011) (liability for IIED arises when defendant "(1) engages in extreme and outrageous conduct (2) which intentionally or recklessly (3) causes (4) severe emotional distress to another.").

8

environment consisting of reprimands, harassment, tampering with [the plaintiff's] work product, denials of promotions and termination" do not usually rise to the level sufficient for an IIED claim); *Kesel v. Martin*, No. 2:12 CV 139, 2014 WL 888884, at *4 (N.D. Ind. Mar. 5, 2014) ("The problem is, there are no 'behaviors' listed in the complaint that smack of the type of conduct needed to colorably state a claim for intentional infliction of emotional distress under Indiana law.").

Plaintiff's IIED claim in this case is at least as deficient as the clams listed above. Much like the claimant in *Hammond*, for instance, Plaintiff does not allege any specific conduct on the part of Defendants. Plaintiff **generally** alleges that "harassment" occurred and that "disparaging comments" were made, but—just as in *Hammond*—these general allegations of "harassment" and a "hostile environment" do not establish an IIED claim. Moreover, Plaintiff's allegations are bare and vague. Unlike the plaintiff's claim in *Harriston*—which included a paragraph of detailed conduct and still did not survive dismissal—Plaintiff here provides no specific facts to support his claim. Again, he alleges only a general plan to embarrass, humiliate, and exclude him, [Dkt. 1-1 ¶¶ 22], and so if the detailed allegations in *Harriston* were insufficient, the vague allegations in the instant complaint are surely insufficient as well.

Plaintiff finally alleges that Abrams engaged in "'extreme and outrageous' conduct" and that "said conduct intentionally or recklessly caused [Plaintiff] severe emotional distress." [Dkt. 1-1 ¶¶ 28-29.] These allegations merely recite the elements for an IIED cause of action in Indiana, *see Curry*, 943 N.E.2d at 361, and they consequently fall short of Rule 8(a)'s pleading standards. *See Twombly*, 550 U.S. at 555 ("[A] formulaic recitation of the elements of a cause of action will not do[.]").

In sum, Plaintiff has provided only vague allegations of harassment and embarrassment. These allegations do not include "specific facts," *Lavalais*, 734 F.3d at 633, that "[go] beyond all possible bounds of decency,'" *Hammond*, 2014 WL 888675, at *4, the Court thus cannot draw a reasonable inference that Defendants committed the tort of IIED. The Magistrate Judge accordingly recommends that Count III be **DISMISSED**. This dismissal, however, should be **WITHOUT PREJUDICE**. If Plaintiff can provide additional detail to support his claims of harassment, exclusion, and embarrassment, Plaintiff may yet have a viable claim, and Plaintiff is thus entitled to re-plead Count III of his complaint. *See, e.g.*, *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) ("Generally, if a district court dismisses for failure to state a claim, the court should give the party one opportunity to try to cure the problem, even if the court is skeptical about the prospects for success.").

### C. Dismissing Count IV.

In Count IV of Plaintiff's complaint, Plaintiff alleges that Defendants tortiously interfered with Plaintiff's contractual rights. [Dkt. 1 at 4.] Defendants move to dismiss this count, claiming that Plaintiff has failed to plead all of the required elements of the cause of action, insofar as Plaintiff has not alleged the breach of a contract to which Plaintiff is a party. [Dkt. 10 at 11.] Plaintiff concedes that he has not pled that such a contract has been breached and, thus, that this claim is insufficiently pled. [Dkt. 26 at 6.] Because all parties agree that Plaintiff has insufficiently pled Count IV, the Magistrate Judge recommends that Count IV be **DISMISSED WITHOUT PREJUDICE**.

### III. Conclusion

For the aforementioned reasons, the Magistrate Judge recommends that the Court

**GRANT** Defendants' Motion to Dismiss Counts III and IV of Plaintiff's Complaint and **DENY** Defendant's Motion to Dismiss Count II of Plaintiff's Complaint. The Magistrate Judge further recommends that the dismissal of Counts III and IV be **WITHOUT PREJUDICE**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen (14) days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure. Plaintiff is granted leave to file an amended complaint consistent with this opinion within fourteen (14) days of the adoption of this Report and Recommendation by the District Judge.

Date: 08/05/2015

_____
Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Jeffrey O. Meunier
jom@mandmlawyers.com

Matthew Joseph Clark
MEITUS GELBERT ROSE LLP
mclark@mgrfirm.com

Robert S. Meitus
MEITUS GELBERT ROSE LLP
rmeitus@mgrfirm.com

Mark W. Sniderman
SNIDERMAN NGUYEN LLP
mark@snlawyers.com